RAMOS *v.* SUCESIÓN CABÁN.

APELACIÓN procedente de la Corte de Distrito de Aguadilla.

No. 829.—Resuelto en junio 18, 1912.

HIJOS NATURALES—ACCIÓN DE FILIACIÓN—SUFICIENCIA DE LA DEMANDA.—En una demanda sobre reconocimiento de hijo natural, no es necesario alegar específicamente todos los diferentes actos ejecutados por el padre demostrativos del reconocimiento. Dichos actos deben ser, como lo fueron en el presente caso, objeto de la prueba practicada durante la celebración del juicio.

ID.—HECHOS ESENCIALES QUE DEBEN ESTABLECERSE.—Dos son las circunstancias que de acuerdo con la Ley 11 Toro, deben demostrarse en un caso de filiación: 1°. que el hijo fué concebido o nació cuando sus padres podían casarse justamente, sin dispensación; 2°. que el padre lo reconoció como a su hijo natural.

ID.—ACCIÓN DE FILIACIÓN—PRUEBAS.—Examinada la prueba aportada al juicio en el caso de autos, este tribunal resolvió, que apreciada en su totalidad era de tal manera clara y suficiente que debía concederse lo solicitado en la demanda, y revocó la sentencia apelada.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Augusto Malaret y José G. Torres.*

Abogados del apelado: *Sres. Carlos Franco Soto y José de Guzmán Benítez.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un caso sobre filiación. En la demanda enmendada se alega:

"Primero. Que el demandante nació el día 15 de octubre de 1889 y es, por tanto, mayor de edad, con capacidad para demandar y ser demandado, y es vecino de San Sebastián, de este distrito judicial.

"Segundo. Que la sucesión demandada la compone Onorífera Cabán, mayor de edad, hija legítima de Don Juan Tomás Cabán, residente en San Sebastián, de este distrito judicial.

"Tercero. Que Don Juan Tomás Cabán, en sus relaciones amorosas con Doña María Ramos, tuvo el demandante Prudencio Ramos, quien pública y privadamente fué siempre tenido por su padre Don Juan Tomás Cabán como hijo suyo. Y al tiempo de la concepción y nacimiento del demandante, sus referidos padres eran solteros y estaban en aptitud de contraer matrimonio.

"Cuarto. Que Don Juan Tomás Cabán falleció el 8 de marzo de 1910."

Onorífera Cabán, por conducto de su abogado, contestó la demanda en la siguiente forma:

"I. No admite el hecho primero en cuanto a la fecha del nacimiento de Prudencio Ramos.

"II. No admite el hecho segundo, toda vez que la Sucesión de Don Juan Tomás Cabán no está compuesta solamente por Onorífera Cabán.

"III. Niega en absoluto que María Ramos hubiera tenido relaciones amorosas con Juan Tomás Cabán y que como resultado de tales relaciones tuvieran a Prudencio Ramos, negando en su conseccuencia, que fuera tenido pública y privadamente por el referido Juan Tomás Cabán como hijo suyo.

"Como materia nueva de oposición, la demandada alega: que María Ramos en la época que procreó a Prudencio Ramos vivía en el barrio de Pozas de San Sebastián, y en dicho barrio y por aquel entonces, era una mujer pública de vida airada, concediendo favores a los numerosos individuos que la solicitaban."

Celebrada la vista, la corte, el 2 de noviembre de 1911, dictó sentencia desestimando la demanda, con las costas a la parte actora. Contra esa sentencia se interpuso el presente recurso de apelación.

Dos son los fundamentos en que descansa la sentencia apelada, a saber:

(*a*) Que la demanda no aduce hechos suficientes para basar la .causa de acción ejercitada, y

(*b*) Que la prueba es insuficiente, pues no aparece de ella que el padre tuviera el propósito deliberado de reconocer como hijo suyo al demandante.

En el acto de la vista en la corte inferior, se probó cumplidamente por la certificación de inscripción, que el demandante nació el 15 de octubre de 1889 y ambas partes por medio de

sus abogados han sostenido ante esta Corte Suprema, y así es
en efecto, que la ley sustantiva que regula este caso es la
once de Toro, vigente en la fecha del nacimiento, y que copiada
a la letra dice así: "E porque no se puede dubdar cuáles son
fijos naturales, ordenamos é mandamos que entonces se digan
ser los fijos naturales, cuando al tiempo que nascieren ó
fueren concebidos, sus padres podían casar con sus madres
justamente, sin dispensación, con tanto que el padre lo reco-
nozca por su fijo, puesto que haya tenido la mujer de quien
lo ovo en su casa, ni sea una sola: ca concurriendo en el fijo
las cualidades susodichas mandamos que sea fijo natural."
(1 Llamas y Molina.   Comentario a las Leyes de Toro, 207.)

No se alegó en este caso por la parte demandada, ni existe
realmente envuelta en el mismo, cuestión alguna de prescrip-
ción, y los puntos esenciales a discutir y a resolver son, como
hemos indicado, si la demanda es suficiente, y si los hechos
alegados en la misma quedaron plenamente demostrados por
la prueba.

A nuestro juicio la demanda es suficiente.   Se dice en
ella que Juan Tomás Cabán en sus relaciones amorosas con
María Ramos, tuvo al demandante Prudencio, quien pública
y privadamente fué siempre tenido por su padre Juan Tomás
Cabán como hijo suyo.   Y que al tiempo de la concepción y
nacimiento del demandante, sus referidos padres eran solteros
y estaban en aptitud de contraer matrimonio.

Esos hechos constituyen las alegaciones esenciales que es
necesario establecer en un caso de esta naturaleza.   Los dife-
rentes actos ejecutados por el padre, demostrativos del reco-
nocimiento, debían ser y fueron objeto de la prueba durante
el juicio, prueba que se practicó además sin la oposición de
la parte contraria.

Y en cuanto al segundo fundamento, diremos que hemos
examinado cuidadosamente toda la prueba y que es tan clara
y demuestra de modo tan evidente que Juan Tomás Cabán
pudo reconocer y reconoció como a su hijo natural al deman-

dante, que es necesario concluir que la corte sentenciadora cometió un error manifiesto al apreciarla.

Dos son las circunstancias que, de acuerdo con la ley aplicable, deben demostrarse en un caso de esta naturaleza.

1°. Que el hijo fué concebido o nació cuando sus padres podían casarse justamente, sin dispensación, y

2°. Que el padre lo reconoció como a su hijo natural.

Veamos la primera circunstancia.

Es un hecho probado por las declaraciones de los testigos de ambas partes, que Juana María Ramos, la madre del demandante, vivía en el barrio de Pozas, de San Sebastián, y que Juan Tomás Cabán, residía en el pueblo.

El testigo Juan Pereira, de 54 años de edad, declaró que: "Siempre ha vivido en Pozas; conoce a Juana María Ramos desde niña de diez a once años; que era vecino de ella y venía a su casa a buscar candela; conocía a Juan Tomás Cabán, como treinta años; veía que pasaba por allí y casi siempre estaba cazando; él vió esa muchacha y le gustó, le dió vueltas y vueltas hasta que la desgració."  .

Juana María Ramos dijo "que desde chiquita conoció a Juan Tomás Cabán, y tuvo siete hijos con él; que Cabán no era casado con ella, pero la tenía en el mismo lugar que si se hubiera casado por la Iglesia; que él después se casó con otra cuyo nombre no recuerda, pero que tuvo de él cinco hijos antes de casarse, entre ellos Prudencio, que nació siendo Cabán soltero.  Que Prudencio nació en el barrio de la Poza siendo ella soltera y también Juan Tomás Cabán."

Y Domingo Liciaga manifestó "que está seguro que cuando nació Prudencio no estaba casado Juan Tomás Cabán."

La parte contraria no se opuso a la práctica de esa prueba, ni la contradijo al presentar la suya, y en tal virtud y atendido además el resultado de las otras pruebas practicadas, debe concluirse que cuando el demandante fué concebido y nació, sus padres pudieron haber contraído matrimonio justamente, sin necesidad de dispensa alguna.

Veamos el segundo extremo.  La prueba es amplia con

respecto al reconocimiento: Ya hemos visto cómo declara Juana María Ramos, quien asegura, además, que Prudencio le decía a Tomás Cabán, *papá,* públicamente, y él le decía *hijo;* que ella y Cabán eran parientes; que Cabán vivió con ella maritalmente como treinta años, etc.

Francisco Ramos, de 25 años de edad, declaró que era hijo natural de Cabán y de Juana María; que Prudencio es también hijo de Cabán y que Cabán y Prudencio se trataban públicamente de padre e hijo. Este testigo reconoció la firma de Juan Tomás Cabán puesta en un papel dirigido a Prudencio que dice así: "Prudencio, yo espero vengas esta tarde al pueblo para que lleves a vender una novilla, yo iré esta tarde para allá, tu padre, Juan T. Cabán." Para probar la autenticidad de ese documento, se presentó otro que al parecer contenía la firma de Cabán. El documento fué admitido como prueba, sin que conste que la parte demandada se opusiera a su admisión, ni que lo impugnara como falso.

Domingo Liciaga, expresó que era hijo natural de Cabán, pero no de Juana María, que Cabán tuvo siete hijos con Juana María a quienes el testigo trataba como a hermanos por indicación de su propio padre.

Andrés Vera manifestó que está seguro que Prudencio es hijo de Cabán, porque este mismo se lo dijo; que llevó dos años de relaciones amorosas con una hija de Juana Ramos y Cabán, y éste un día le dijo: "Mire, Andrés, que yo quiero que mis hijas se casen con un hombre trabajador, que mañana no vayan a sufrir; él le dijo que estaba dispuesto a llevarla al altar y él entonces consintió."

José B. Borrego, de 48 años, natural y vecino del barrio de Pozas, vivía cerca de Juana María Ramos y sabe que Cabán tenía relaciones amorosas con ella que duraron como treinta años; "que Cabán y Prudencio se trataban como padre e hijo porque oyó varias veces al chico decirle *papá,* y él *hijo*"; que está seguro de que sólo Cabán era el que sostenía a Juana Ramos y que ha visto a Prudencio pedirle públicamente la bendición a Cabán.

Segundo Cortés está enterado de relaciones entre Cabán y Juana Ramos públicas y notorias y de que Cabán trataba a Prudencio de "hijo" y éste a aquél de "padre."

Victoriano Latorre de 57 años, dijo que ha vivido siempre en Pozas, que conoció a Juana María Ramos desde jovencita; que ella desde esa edad no ha tenido relaciones con otro hombre que Cabán; que Juana tuvo con Cabán varios hijos; "que sabe que Prudencio era hijo de Cabán porque él le dijo que fuera a bautizarlo y cuando fueron a buscar al niño él estaba en casa de Juana María Ramos; que siempre trató a Cabán de compadre y él lo mismo."

Dolores Rivera, de sesenta años, fué la que asistió a Juana María al dar a luz a Prudencio y lo hizo así por orden de Cabán, quien le pagó por su trabajo.

Juan Borrero sabe que Cabán vivió con Juana Ramos como treinta años; que tuvieron varios hijos entre ellos Prudencio, que Cabán fué el único hombre que vivió con Juana.

Ya nos hemos referido a la declaración de Juan Pereira, quien manifestó además, que Cabán trataba a Prudencio como hijo y que Prudencio le llamaba *papá* y él *hijo* y le echaba la bendición.

Miguel Cruz, de sesenta y tres años, confirma el hecho de las relaciones amorosas públicas de Cabán con Juana María Ramos y el de la existencia de hijos como resultado de dichas relaciones, entre ellos Prudencio que se dirigía a Cabán como a un padre y éste a aquél como a un hijo.

Y por último declara el propio demandante que da amplios detalles con respecto a sus relaciones con su padre natural.

La prueba de la parte demandada tendió a contradecir algunos extremos de las declaraciones de los testigos del demandante, tales como que Cabán hubiera llevado a Prudencio a la escuela, o lo hubiera recomendado al Dr. Franco para que lo curara de cierta enfermedad. Otros testigos manifestaron que no obstante conocer y tratar a Cabán por muchos años, no estaban enterados de que tuviera relaciones con Juana María Ramos, ni de que Prudencio fuera hijo suyo. Con

respecto a las alegaciones contenidas en la contestación, de
que la Sucesión Cabán no está compuesta solamente por Ono-
rífera Cabán, y de que María Ramos en la época en que pro-
creó a Prudencio Ramos era una mujer pública de vida airada,
no presentó la parte demandada prueba alguna en el acto de
la vista.

No se trata, pues, de un verdadero caso de evidencia con-
tradictoria. · En lo fundamental, la prueba del demandante
ha quedado sin contradecir.  Omitiendo de ella los extremos
contradichos directamente por la prueba del demandado y
aceptando que no deban tomarse en consideración, aun así
quedaría prueba abundante para dictar una sentencia decla-
rando la demanda con lugar.

Parece que el juez no basó su resolución en que estimara
dignos de crédito a los testigos del demandado y faltos de
veracidad a los del demandante, sino en que apreciada en su
totalidad la prueba, a su juicio no era suficiente para demos-
trar el propósito deliberado del padre de reconocer al hijo.

Nosotros creemos que su conclusión es errónea, porque
la prueba no solo demuestra que el demandante es hijo de
Cabán y de María, concebido y nacido siendo el uno y la otra
solteros, sino que fué reconocido como tal hijo privada y
públicamente.  Las relaciones de Cabán con María duraron
muchos años.  Cabán atendió a Prudencio desde antes de
nacer enviando a Dolores Rivera para que asistiera a María
en el momento de darlo a luz y pagándole después.  Cabán
pidió a Victoriano Latorre que sirviera de padrino a su hijo
Prudencio.  Latorre accedió y fué siempre tratado después
por Cabán como su compadre.  Cabán llamó públicamente
''hijo'' a Prudencio y éste ''padre'' a Cabán.  Cabán bendijo
también públicamente a su hijo Prudencio y en sus relaciones
de negocios le escribió un papel firmado:. ''Tu padre, Juan T.
Cabán.''

La prueba es, pues, de tal manera clara, que es necesario
concluir, como dijimos al comenzar a analizarla, que el juez
de distrito la apreció con manifiesto error, procediendo, por

tanto, la revocación de su sentencia, dictándose en su lugar otra por esta Corte Suprema concediendo lo solicitado en la demanda.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, Wolf y Aldrey.